### In the Matter of Peter L. BENJAMIN

#### No. 45S00–9712–DI–655.

Supreme Court of Indiana.

Nov. 10, 1999.

Samuel J. Goodman, Highland, for the Respondent.

Donald R. Lundberg, Executive Secretary, Seth Pruden, Staff Attorney, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

### DISCIPLINARY ACTION

#### PER CURIAM

The respondent, Peter L. Benjamin, retained an unreasonable attorney fee from the settlement of a medical malpractice claim in reliance on an incomplete fee agreement with his client. Today we approve a *Statement of Circumstances and Conditional Agreement for Discipline* between the respondent and the Indiana Supreme Court Disciplinary Commission which will result in our public reprimand

of the respondent for engaging in this professional misconduct. *See* Ind. Admission and Discipline Rule 23, Section 11.

As a preliminary matter, we note the respondent was admitted to practice law in this state in 1978. Therefore, he is subject to the disciplinary authority of this Court.

The undisputed facts are that in July 1992, the husband of the respondent's client died while undergoing treatment at a Fort Wayne hospital. In January 1993, the client hired an attorney who shared office space with the respondent to pursue a medical malpractice action against the hospital. The attorney prepared a written fee agreement in which he would receive "40% of total recovery not to exceed attorney fee of 200,00 (sic)."

The respondent and the attorney subsequently formed a partnership to practice law. No new fee agreement was drafted. When that partnership was dissolved in May 1995, the respondent retained the client's case in his office. The respondent and the client did not enter into a new fee agreement; instead, the respondent proceeded under the fee agreement signed by his former partner and the client.

In the summer of 1995, the hospital and the client reached a settlement wherein the hospital would pay $100,000, its maximum liability under the Indiana Medical Malpractice Act. The agreement called for an initial payment of $50,000, with the remaining $50,000 to be paid in structured payments over a course of years, with interest. Upon receipt of the $50,000 initial payment, the respondent retained $40,000 (eighty percent of the total) and forwarded the remaining $10,000 to the client. Respondent obtained the $40,000 figure by calculating his forty percent (40%) fee based upon the gross settlement amount of $100,000, rather than the actual amount forwarded to him ($50,000) or the current value of the future payments.

In September 1995, the respondent filed a petition with the Indiana Patient Compensation Fund on behalf of the client for damages in excess of the hospital's settlement. In January 1996, a settlement which would entitle the client to receive $335,000 from the Fund was finalized. Upon receipt of the Fund settlement check, the respondent retained $134,000, which was forty percent (40%) of the $335,000. Indiana Code 27–12–18–1 limits the fees an attorney may receive from the Patient Compensation Fund to fifteen percent (15%) of the recovery—$50,250 in this case. The fees retained by the respondent exceeded the statutory limit by $83,750.

The client challenged this distribution. She requested that the respondent retain only forty percent (40%) of the $100,000 settlement from the hospital and fifteen percent (15%) of the Fund portion. The respondent countered by agreeing to pay a refund based on his former partner's interpretation of the fee agreement.

Correspondence from the former partner to the client in the early stages of the litigation indicates the former partner intended that the forty percent (40%) agreement was to apply only to the non-Fund, or provider, portion of the settlement. If the Fund also paid damages, the former partner intended to retain all of the non-Fund portion (one hundred percent of the $100,000) and fifteen percent (15%) of the Fund portion pursuant to I.C. 27–12–18–1. In essence, the former partner had intended to have two (2) separate fee arrangements; one for settlement from the provider only and another if the client obtained recovery from the Fund as well.

Using the second fee formula intended by the respondent's former partner (but not set out in the fee agreement itself), the respondent calculated that he was entitled to one hundred percent (100%) of the non-Fund portion ($100,000 of $100,000) and fifteen percent (15%) of the Fund portion ($50,250 of $335,000). Thus, the respondent calculated his total fee at $150,250. As he had retained $174,000 ($40,000 plus $134,000), the respondent offered to return $23,750, plus interest, to the client.

That result was unacceptable to the client. The respondent thereafter filed a declaratory judgment action seeking a determination of the appropriate distribution.

While that case was pending, the client and the respondent agreed to settle the matter, and the respondent returned approximately $75,000 to the client.

We find, and the parties agree, that the respondent violated Ind. Professional Conduct Rule 1.5(a) by charging an unreasonable fee.[1] Two aspects of the respondent's fee are strongly indicative of its unreasonableness. First, the respondent retained a fee greater than that allowed by statute governing recoveries from the Indiana Patient Compensation Fund. We have held that an attorney's fee greater than the presumptive limits established by Indiana regulations governing worker's compensation was unreasonable. *Matter of Maley*, 674 N.E.2d 544, 546 (Ind.1996). Fee agreements calling for attorney fees in excess of that mandated by Indiana law also have been found to be void or unenforceable. *See, e.g., Bauer v. Biel*, 132 Ind.App. 224, 177 N.E.2d 269 (1961) (agreement to pay more than presumptive attorney fee in worker's compensation case held to be unenforceable).[2]

Also indicative of the fee's unreasonableness is the respondent's retention of forty percent (40%) of the $100,000 initial settlement from the first payment of only $50,-000. The balance was to be paid pursuant to the terms of a structured settlement. We have held that the retention of a ten percent (10%) contingency fee from a total structured settlement of $550,000, where the entire fee was retained from the first two payments of $50,000 each and where the debtor ultimately defaulted after only $160,000 had been paid, was unreasonable. *Matter of Myers*, 663 N.E.2d 771 (Ind. 1996). While there is no mention of any subsequent default on the agreed total settlement in this case, we find under the circumstances of this case that the respondent's insistence (in the face of clear opposition from his client) that he retain his entire contingency fee from the first settlement payment amounted to exacting an unreasonable fee. We therefore conclude that the respondent violated Prof.Cond.R. 1.5(a).

We also find, and the parties agree, the respondent violated Prof .Cond.R. 1.5(c) by failing to set forth the complete method of calculating fees in the written fee agreement.[3] While the parties have not provid-

---

1. Prof.Cond.R. 1.5(a) provides:

   A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
   (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
   (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
   (3) the fee customarily charged in the locality for similar legal services;
   (4) the amount involved and the results obtained;
   (5) the time limitations imposed by the client or by the circumstances;
   (6) the nature and length of the professional relationship with the client;
   (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
   (8) whether the fee is fixed or contingent.

2. Adopting his former partner's interpretation of the original fee agreement, the respondent attempted to retain as his fee $100,000 of the $100,000 settlement from the defendant hospital, in addition to 15 percent of the recovery from the Indiana Patient Compensation Fund. We find that approach to be an attempt to circumvent the statute limiting the recovery allowed from the Fund. By retaining as his fee an unreasonable portion of the recovery from the settlement with the hospital, the respondent would have effectively offset the 15 percent limitation on his fee from the Fund recovery.

   We note, in any event, that an attorney's written disclosure to the client of the fee and the method by which it is to be determined is of key importance in avoiding disputes over the reasonableness of a fee.

3. Prof.Cond.R. 1.5(c) provides:

   A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined,

ed a copy of the fee agreement to the Court, they agree that the fee agreement does not contain the entire formula used to calculate the fee retained by the respondent.

Given our finding of misconduct, we must determine an appropriate sanction. In making that assessment, we consider the nature of the misconduct, the lawyer's state of mind which underlies the misconduct, actual or potential injury flowing from the misconduct, the duty of this Court to preserve the integrity of the profession, the risk to the public in allowing the respondent to continue in practice, and any mitigating or aggravating factors. *Matter of Lehman*, 690 N.E.2d 696 (Ind. 1997).

The parties offer a number of mitigating facts. They agree that the respondent miscalculated his original fee and neglected to review the settlement statement prepared by his legal assistant; therefore, they suggest his acceptance of the original fee was not the product of deceit or intentional wrongdoing, as evidenced by his filing of the declaratory judgment action. They also note the respondent has fully cooperated with the Commission and has settled the fee dispute with his client. They also state that the respondent recognizes his error with respect to the fee agreement and has drafted a new fee agreement for use in medical malpractice cases. Finally, they state that the respondent is remorseful and that he has never before been disciplined during his twenty (20) years of practice.

These factors mitigate the severity of respondent's conduct, but do not excuse it. The reasonableness of an attorney's fee is an important question of public import with broad implications; it has an impact on the availability of legal services to the public and the administration of justice, and, ultimately, reflects on the attorney's status. *Myers*, 663 N.E.2d at 774. Excessive legal fees may have a chilling effect on the public's reliance on the legal system as the means for protecting rights.

Whether the respondent's actions were the product of omissions or active deceit, the fact remains that he created the confusion which surrounded the payment of fees in this case. First, he failed at the time he took over the client's case to review the fee agreement which the respondent's partner and the client had signed. Cursory review of that document would have revealed its ethical and practical shortcomings. Moreover, such review should have prompted the creation of a new fee agreement consistent with I.C. 27–12–18–1 and the *Rules of Professional Conduct*. The respondent's inappropriate reliance on what turned out to be an ambiguous and incomplete contingency fee agreement substantially prompted the confusion regarding his fees.

Second, the respondent ignored the statutory limitation on recovery from the Fund and retained fees from the settlement far in excess of the statutory maximum. When the client disputed the fee, the respondent forced the client into further litigation by initiating a declaratory action to determine the appropriate distribution of the settlement proceeds. The respondent did not return the excess funds to the client until after this disciplinary matter was filed.

The parties suggest a public reprimand is the appropriate sanction for this misconduct, in light of the mitigating circumstances. We have imposed such a sanction when faced with substantially similar misconduct. *See, e.g., Myers, supra* (public reprimand where attorney retained full contingency fee from first payment of

---

including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a

contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

structured settlement and fee agreement did not set forth specific method of calculating fee); *Maley, supra,* 674 N.E.2d 544 (Ind.1996) (public reprimand where attorney retained contingent fee beyond limit set by Worker's Compensation Act). Given that precedent and the mitigating factors in this case, we conclude that the appropriate sanction for respondent's misconduct is a public reprimand.

It is, therefore, ordered that the respondent, Peter L. Benjamin, is hereby reprimanded and admonished for the misconduct occurring in this case.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the Clerk of the United States Court of Appeals for the Seventh Circuit, the Clerk of each of the United States District Courts in this state, and the Clerk of each of the United States Bankruptcy Courts in this state with the last known address of the respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.