**In the Matter of Michael J. GALANIS.**

**No. 45S00–9904–DI–233.**

Supreme Court of Indiana.

March 19, 2001.

Terry L. Smith, Smith & DeBonis, Highland, for the Respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

The respondent, Michael J. Galanis, agreed in writing to represent a client in her personal injury lawsuit in exchange for forty percent (40%) of her recovery. The respondent ultimately retained fifty percent (50%) of the recovery—$20,000 more than agreed—and refused the client's demands for the return of the excess fees. We suspend the respondent from the practice of law in Indiana for ninety (90) days for such misconduct.

Having been admitted to the bar of this state in 1979, the respondent is subject to our disciplinary jurisdiction. A hearing officer was appointed to this case, and, after a hearing, tendered his report to this Court. The hearing officer determined the respondent violated Ind.Professional Conduct Rule 1.5(a) by charging an unreasonable fee.

Neither the respondent nor the Disciplinary Commission has petitioned this Court for review of the hearing officer's report. Where the hearing officer's report is unchallenged, we accept and adopt the findings contained therein but reserve final judgment as to misconduct and sanction. *Matter of Kristoff,* 611 N.E.2d 116 (Ind. 1993).

Within that review framework, we now find a client hired the respondent in 1993 to represent her in her pending claim for personal injuries arising from an automobile accident. The fee agreement signed by the respondent and his client called for the respondent to receive a contingent fee of forty percent (40%) of the gross amount recovered by the filing of a lawsuit, plus expenses. The agreement further provided that the client would pay an additional ten percent (10%) of the gross settlement if it were appealed by another party to the litigation.

A jury returned a verdict of $250,000 for the client. The defendant filed a motion to correct errors in which she urged that the damages awarded by the jury—which were $150,000 more than her available insurance coverage—were excessive and should be reduced. The respondent, on behalf of his client, filed a brief opposing the motion to correct errors. The trial court denied the motion.

The respondent began investigating the availability of collecting directly from the defendant the $150,000 of the judgment not covered by insurance. He determined that the defendant had been declared incompetent and was under a guardianship. He further determined that the guardianship did not have sufficient assets to satisfy the excess judgment.

That led the respondent to investigate whether the defendant might have grounds for a claim against the defendant's insurer for bad faith. The respondent ultimately determined a factual basis for that claim existed. The respondent negotiated with the defendant's attorney, seeking an agreement under which the defendant would assign her claim of bad faith judgment to the client in exchange for a covenant not to execute the judgment against the defendant. In response, the defendant's attorney initially offered to resolve the personal injury lawsuit for $150,000—$100,000 less than the judgment but $50,000 more than available insurance coverage. Eventually, the respondent and the defendant's attorney negotiated a $200,000 settlement which did not include

assignment of any bad faith claim which the defendant had against her insurer.

On or about April 28, 1994, the client went to the respondent's office to approve the disbursement of the settlement. The respondent gave the client a disbursement statement calling for his retention of $100,000 in attorney fees—the equivalent of fifty percent (50%) of the total settlement. The statement indicated the settlement was for a claim of damages arising out of the automobile accident and did not indicate that any of the fees were calculated on an hourly basis. The statement also made no reference to compensation for an independent bad faith claim against the insurer.

The client later objected to the disbursement, claiming that the respondent was entitled to forty percent (40%) of the settlement proceeds, not fifty percent (50%), because the case was not appealed. Though not disputing that no appeal occurred, the respondent refused to return the ten percent (10%). He testified at hearing that he spent more than eighty-three (83) hours researching the potential bad faith claim against the defendant's insurer and that his normal billing rate was $250 per hour. Thus, he asserted his time on the bad faith claim was worth about $21,000.

We find that the respondent violated Prof.Cond.R. 1.5(a) by charging an unreasonable fee. Under the fee agreement, he was entitled to forty percent (40%) of the $200,000—$80,000. The hearing officer's findings indicate the respondent justified the $100,000 fee by asserting he was entitled to $20,000 in hourly fees for his work on the bad faith claim in addition to the forty percent (40%) of the $200,000 settlement authorized by the fee agreement. This approach rests on his assertion that the bad faith claim was a separate action to which a different fee structure applies.

The respondent's argument fails. First, the fee agreement does not specify that the respondent is entitled to an hourly rate nor does it specify an hourly rate. The fee agreement only refers to a percentage recovery of any gross amount recovered from the lawsuit. Moreover, the disbursement statement does not reflect any hourly billing rate. It notes a total settlement of $200,000 and attorney fees of $100,000. While the respondent contends the bad faith claim was separate from the client's personal injury claim, the respondent and the client negotiated and finalized only one fee agreement. Nothing in that fee agreement suggests that the personal injury and bad faith claims are separate actions to which separate billing procedures will apply.

In fact, the bad faith claim was not a separate action in which the respondent was representing his client and for which he was entitled to separate fees totaling $20,000. The bad faith claim belonged to the defendant in the personal injury lawsuit, not the respondent's client. The defendant's possible bad faith claim against her insurer was an asset of the defendant which the respondent discovered during his efforts to collect his client's personal injury judgment. To the extent that the respondent researched the merits of a bad faith claim against the insurer, he did so only as a means of collecting the judgment in his client's personal injury lawsuit.

Where there is a written fee agreement specifying the amount of legal fees the client will pay, an attorney's retention of a fee greater than that specified in the agreement is strongly indicative of an unreasonable fee. *Matter of Lehman*, 690 N.E.2d 696 (Ind.1997). In this case, the respondent retained fifty percent (50%) of the settlement when the fee agreement provided for forty percent (40%). He has failed to establish any legitimate grounds for retaining the additional ten percent (10%) as fees. Accordingly, we find the respondent charged an unreasonable fee, in violation of Prof.Cond.R. 1.5(a).

Given our finding of misconduct, we must determine an appropriate sanction. In doing so, we consider the misconduct,

the respondent's state of mind underlying the misconduct, the duty of this court to preserve the integrity of the profession, the risk to the public in allowing the respondent to continue in practice, and any mitigating or aggravating factors. *Matter of Mears,* 723 N.E.2d 873 (Ind.2000). The reasonableness of an attorney's fee is an important question of public import with broad implications; it has an impact on the availability of legal services to the public and the administration of justice, and, ultimately, reflects on the attorney's status. *Matter of Benjamin,* 718 N.E.2d 1111 (Ind.1999).

The respondent attempted to take fifty percent (50%) of his client's recovery when he was entitled to only forty percent (40%). When the client objected and sought return of the excess fees, the respondent refused and, to justify his excessive fee, claimed that he was entitled to $20,000 in hourly fees. In light of the substantial amount of the unreasonable fee, we find that the respondent's misconduct warrants a significant period of suspension.

It is, therefore, ordered that the respondent, Michael J. Galanis, is hereby suspended from the practice of law for ninety (90) days, beginning April 23, 2001. At the conclusion of this suspension, he shall be automatically reinstated if he has: 1) fully reimbursed the client the $20,000 in fee overcharges; 2) provided proof of such reimbursement to the Commission before the 80th day of his suspension; and 3) paid the costs assessed in this proceeding. If such conditions are not met before the expiration of the ninety (90) day suspension, the respondent's suspension shall continue until he successfully petitions for reinstatement pursuant to Ind. Admission and Discipline Rule 23(4).

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the Clerk of the United States Court of Appeals for the Seventh Circuit, the Clerk of each of the United States District Courts in this state, and the Clerk of each of the United States Bankruptcy Courts in this state with the last known address of the respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.