ATTORNEY FOR THE RESPONDENT
Marce Gonzalez
Merrillville, Indiana

ATTORNEYS FOR AMICUS CURIAE, INDIANA TRIAL
LAWYERS ASSOCIATION
Karl L. Mulvaney
Nana Quay-Smith
Indianapolis, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
Donald R. Lundberg, Executive Secretary
Gregory N. Anderson, Staff Attorney
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 45S00-0505-DI-244

IN THE MATTER OF DANIEL B. STEPHENS,                                    *RESPONDENT.*

Attorney Discipline Action

Opinion on the Motion to Intervene by the
Indiana Trial Lawyers Association

May 31, 2007

**Per Curiam.**

On August 11, 2006, this Court approved a "Statement of Circumstances and Conditional Agreement for Discipline" under which Respondent received a public reprimand for violation of Indiana Professional Conduct Rules 1.5(a) and 1.8(a) for his fee arrangement with a client in a medical malpractice action. *See* In re Stephens, 851 N.E.2d 1256 (Ind. 2006) ("Stephens I"). Pending before the Court is the "Verified Motion for Leave to Intervene and/or Appear as *Amicus Curiae* by the Indiana Trial Lawyers Association and Request for Stay" ("Motion to Intervene") filed on September 11, 2006, urging the Court to reconsider its conclusion that Respondent had improperly attempted to circumvent the limitation on attorney fees recoverable under the Indiana

Medical Malpractice Act ("MMA") from the Patient Compensation Fund ("Fund"). The Court now permits the Indiana Trial Lawyers Association ("ITLA") to intervene and issues this opinion addressing contingent fees in medical malpractice cases.

## I. Background

At the times relevant to this case, the MMA provided that a patient's damages were capped at $500,000, the initial $100,000 were to be paid by the health care provider or its insurer, and damages in excess of $100,000 were to be paid from the Fund. The MMA also provided (as it does today) that a lawyer's recovery from the Fund was (and is) limited to 15% of the amount the client recovers from the Fund. *See* Ind. Code § 34-18-18-1. Respondent entered into a contingent fee agreement with a client in a medical malpractice case that provided him with a one-third fee calculated on all sums recovered, accomplished by having the client agree that Respondent's fee from the first $100,000 recovered plus the 15% attorney fee generated from the Fund recovery would equal one-third of the total recovery. In addition, Respondent later renegotiated the fee agreement with the client to include a $10,000 nonrefundable retainer. Respondent did not advise the client to seek independent counsel.

On August 11, 2006, this Court approved a "Statement of Circumstances and Conditional Agreement for Discipline" under which Respondent received a public reprimand for violation of Indiana Professional Conduct Rules 1.5(a) (charging an unreasonable fee) and 1.8(a) (acquiring a pecuniary interest adverse to the client without written consent from the client). *See* Stephens I, 851 N.E.2d 1256 (Ind. 2006). The Court stated:

> While the medical malpractice statutes do not restrict the amount of attorney fees taken from the first $100,000 recovered, our Rules of Professional Conduct do set standards for attorney fees. . . . An attempt to circumvent the statute limiting the recovery allowed from the Fund is not proper. The limitation on fees imposed by IC 34-18-18-1 cannot be overcome by merely manipulating the source of the fees. Regardless of the source of the fee, an attorney's compensation must still meet the reasonableness requirements of Prof.Cond.R. 1.5(a) and the 15% limitation of IC 34-18-18-1.
>
> . . . .
>
> Respondent's attempt to avoid the statutory limit on Patient Compensation

2

Fund attorney fees was wholly improper. Not only did respondent seek to avoid the clear language of the statute, but he also sought to do so by suggesting an unreasonable fee arrangement, thereby violating the Rules of Professional Conduct. In the future, violations of this nature are likely to result in discipline that is more serious.

Id. at 1257-58 (citation omitted).

In its Motion to Intervene, ITLA urges the Court to reconsider its conclusion that Respondent had improperly attempted to circumvent the limitation on attorney fees recoverable from the Fund. By order dated October 3, 2006, the Court invited participation by entities wishing to appear as *amicus curiae*, sending a copy of the order to representatives of the following organizations: Indiana State Bar Association, Indianapolis Bar Association, Defense Trial Counsel of Indiana, Indiana State Medical Association, Indiana Department of Insurance, Indiana Hospital and Health Association, and Indiana State Chiropractic Association. None of these organizations offered comments on this case. The matter has been fully briefed by ITLA and the Indiana Supreme Court Disciplinary Commission ("Commission").

## II. Discussion

### A. Indiana's Medical Malpractice Act.

The MMA, which is applicable to acts of malpractice occurring after June 30, 1975, *see* Ind. Code § 34-18-1-1, set up a system under which health care providers meeting qualifications set forth in the act ("Qualified Provider") would enjoy certain benefits, including a limitation on liability. For an act of malpractice occurring after June 30, 1999, the total amount recoverable for an injury or death is now capped at $1,250,000. *See* Ind. Code § 34-18-14-3(a)(3). A Qualified Provider's liability for an occurrence of malpractice is now limited to $250,000. *See* Ind. Code § 34-18-14-3(b). Any remaining amount due from a judgment or settlement is to be paid from the Fund. *See* Ind. Code § 34-18-14-3(c). The MMA limits a lawyer's recovery to 15% of the amount the client recovers from the Fund, *see* Ind. Code § 34-18-18-1, but it specifies no limit on attorney fees recovered from the amount a client receives from a Qualified Provider.

3

In addressing early constitutional challenges to the MMA, this Court noted the Legislature's perception of a health care crisis brought on, in substantial part, by providers' inability to obtain adequate malpractice insurance coverage at reasonable prices.

> According to the Legislature's appraisal, these conditions implicated the vital interests of the community in the availability of the professional services of physicians and other health care providers. . . .

> With these judgments as its basis the Act created voluntary state-sponsored liability insurance for doctors and other health care providers, created a patient compensation fund, took measures to prevent injuries to patients through the negligence of health care providers, and subjected negligence claims against health care providers to special controls limiting patient remedies.

Johnson v. St. Vincent Hosp., Inc., 273 Ind. 374, 379-80, 404 N.E.2d 585, 590 (1980).

One challenge in Johnson was to the 15% cap on the lawyer's recovery from the amount a client receives from the Fund. This Court found no constitutional infirmity.

> The legislative purpose of this restriction is to prevent attorneys representing plaintiffs from receiving inordinately large fees where contingent fee arrangements have been made. We recognize that plaintiffs' attorneys frequently and energetically make arduous efforts on behalf of their clients in return for fees which cannot accurately be characterized as inordinately large. However, this Court has also noted that abuses of the contingent fee contracts have occurred and that parties aggrieved by clearly excessive arrangements will receive the protection of the courts. Contingent fee contracts are sanctioned by the Code of Professional Responsibility so long as the fee is reasonable.

> In this case we examine the limitation imposed upon attorney fees for constitutional purposes alone. We find that there is a direct relationship between the limitation upon recovery and the limitation on attorney fees. The total amount recoverable by the injured patient was limited. The limitation on attorney fees follows naturally as a means of **protecting the already diminished compensation due claimants from further erosion due to improvident or unreasonable contracts for legal services.**

> The specific limitation implanted by the Legislature does not seem to be one which will seriously impede the ability of the injured patient to employ effective counsel. **It does not effect at all the enforceability of contracts made regarding fees to be paid from the first $100,000 [now $250,000] of recovery, as that amount is not received from the compensation fund.** However, contracts providing for fees in excess of the limitation on awards from the compensation fund are not enforceable. **The limitation will in practice result in legal fees**

4

**ranging between about 20% to 35% of the total recovery.** As a general proposition fees at this level are commonly considered reasonable in tort litigation.

*Id.* at 402, 404 N.E.2d at 602-03 (citations omitted, emphasis added).

The Disciplinary Commission argues that the fee on the amount from the Fund is limited to 15%, and the fee on the recovery from the provider is limited to a reasonable fee on that amount. If that were the case, assuming the fee on the amount from the provider is larger than 15%, as the total recovery increases, the fee becomes a smaller percentage of the total. The 20%-35% range described in <u>Johnson</u> indicates that the Court assumed a contingent fee of 40% on the amounts recovered directly from the client, and 15% on the amounts recovered from the Fund. On that assumption, applying the limits of recovery in place at the time <u>Johnson</u> was decided, the maximum total recovery of $500,000 would produce a fee of 15% of $400,000 plus 40% of $100,000. That is $60,000 plus $40,000, which is precisely 20% of $500,000. At the other end of the percentage scale, a total recovery of $125,000, of which only $25,000 would come from the Fund, would produce a fee of $40,000 plus $3,750, which is precisely 35% of $125,000.

The same assumption underlies our opinions in <u>In re Benjamin</u>, 718 N.E.2d 1111 (Ind. 1999), and <u>Stephens I</u>. In neither of those proceedings was the matter directly addressed, however, and in <u>Benjamin</u> the fee was unreasonable even if, as ITLA argues, a 40% fee is often reasonable, and can be calculated as 15% on the Fund recovery, plus whatever percentage of the recovery from the provider is required to produce a fee of 40% of the total recovery.

**B. The Indiana Rules of Professional Conduct.**

With respect to attorney fees, the Rules of Professional Conduct state:

**A lawyer shall not make an agreement for, charge, or collect an unreasonable fee** or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

5

(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

Ind. Professional Conduct Rule 1.5(a) (emphasis added). Clients are further protected by the requirement that contingent fee agreements be clearly disclosed in writing and signed by the client. *See* Prof. Cond. R. 1.5(c). These rules, coupled with Johnson, mean an attorney may ethically charge a reasonable percentage of the client's non-Fund recovery in order to recover a reasonable total fee.

**C. Precedent.**

Clearly, charging an attorney fee in excess of that allowed by a statute or regulation also constitutes an ethical violation. In In re Maley, 674 N.E.2d 544 (Ind. 1996), this Court imposed a public reprimand on an attorney who retained a fee in excess of the fee awarded to him by the Worker's Compensation Board according to presumptive limits established by Indiana Worker's Compensation regulations. *See also* Bauer v. Biel, 132 Ind.App. 224, 177 N.E.2d 269 (1961). The complication in medical malpractice cases is that the fee from only one of two sources of recovery is legislatively capped. The issue is at what point attorney fees charged to the non-Fund recovery cross the line from producing a reasonable total fee to circumventing the Legislature's intent to restrict the fees recoverable from the Fund.

In In re Benjamin, 718 N.E.2d 1111 (Ind. 1999), this Court considered the propriety of a medical malpractice contingent fee under the Rules of Professional Conduct. In that case, simplifying the facts somewhat, under a contingent fee arrangement as interpreted by the attorney, the attorney would retain 40% of non-Fund recovery if there were no recovery from the Fund. If the Fund also paid damages, the attorney would retain 100% of the non-Fund portion and 15% of the Fund portion. *See* id. at 1112. A settlement was reached under which the client would receive a gross amount of $100,000 in non-Fund money, $50,000 down, and the balance over several years

in a structured settlement. The attorney retained $40,000 from the first $50,000 installment, thereby claiming substantially more than 40% of the present value of the settlement with the provider. Later, a settlement under which the client received $335,000 from the Fund was finalized, and the attorney retained $134,000, which was 40%, of the Fund payment, for a total fee of $174,000, again more than 40% of the present value of the total recovery. After the client challenged this distribution, the attorney calculated that he was entitled to 100% of the non-Fund portion ($100,000) plus 15% of the Fund portion ($50,250), for a total fee of $150,250. The client refused the attorney's offer to return $23,750, and eventually the parties reached a settlement under which the attorney returned about $75,000 to the client. *See* id. at 1112-13.

This Court issued an agreed public reprimand to the attorney for several ethical violations, including failing to set forth the complete method of calculating fees in the written fee agreement, retaining his entire non-Fund contingent fee from the first non-Fund settlement payment, and retaining a fee greater than that allowed by statute from the client's recovery from the Fund. *See* id. at 1113-14. Of particular relevance to the current case, this Court stated:

> [T]he respondent attempted to retain as his fee $100,000 of the $100,000 settlement from the defendant hospital, in addition to 15 percent of the recovery from the Indiana Patient Compensation Fund. We find that approach to be **an attempt to circumvent the statute limiting the recovery allowed from the Fund.** By retaining as his fee **an unreasonable portion of the recovery from the settlement with the hospital**, the respondent would have effectively offset the 15 percent limitation on his fee from the Fund recovery.

Id. at 1113 n.2 (emphasis added). As already noted, the fee Benjamin attempted to collect exceeded 40% of the present value of the total recovery, and also was not at all explained in his fee agreement, both of which constituted independent grounds for finding a violation of the Rules of Professional Responsibility.

**D. Proceedings on Rehearing.**

In response to Stephens I, ITLA moved to intervene and seek rehearing. In capsule form, ITLA argued that until Stephens I the Court had not made clear that it was adopting the Commission's view of the MMA's limitations on reasonable fees. ITLA presented extensive testimony by affidavit in support of its view that fees so limited will significantly impair the ability of

7

claimants to present their cases. ITLA notes that a medical malpractice claim often requires substantially more resources, knowledge, and preparation than a conventional tort. A medical malpractice claim potentially involves the presentation to a panel, followed by a trial. Specifically, many medical malpractice claims require expert testimony and specialized knowledge on the part of the attorney beyond the demands of conventional tort litigation. ITLA argues that such claims usually involve extensive intake, screening, and preliminary investigation and consultation; resource-intensive medical research, discovery, and consultation with expert witnesses; preliminary submission to a medical review panel that typically involves hundreds of pages of deposition testimony, affidavits, medical articles, and medical records, and adds an inherent pre-suit delay of two to three years; uncommon difficulty of reaching settlements without trial in many cases; typical litigation expense of $20,000 to $30,000 for cases that settle without trial, and $40,000 to $65,000 and upwards for cases that go to trial; and a very modest statistical likelihood of eventual success. Citing data based on the thirty years from 1975-2005,[1] ITLA claims that only 10.2% of proposed complaints result in a medical review panel finding of medical malpractice, and only 13.8% received any payment from the Fund. As a result of these factors and others, ITLA contends that a relatively small number of attorneys are equipped to handle a medical malpractice claim, and it is entirely reasonable to allow a fee approximating one-third of the entire recovery to the plaintiff, even if it is calculated by applying the statutorily limited 15% to the Fund recovery, and a much greater percentage to the recovery from the provider or its insurer. ITLA argues that refusal to permit such a fee will result in denying representation to clients with more difficult cases, or forcing the clients to accept inexperienced or unqualified counsel.

ITLA asserts that after Benjamin was decided, a group of medical malpractice lawyers, including ITLA members, sought clarification of the attorney fee issue from the Executive Director of the Commission and the State Court Administrator. Although there is some dispute about what transpired, ITLA asserts the attorneys believed it was ethically permissible to enter into a "sliding scale" fee arrangement, under which the percent retained from the non-Fund recovery could vary depending on the amount of Fund recovery to produce a reasonable total fee.

---

[1] *See* Indiana Patient's Compensation Fund Annual Report for 2005 (Ind. Dept. of Ins. 2006), ITLA's App'x. at 124.

ITLA states many past and current medical malpractice fee agreements, including the one initially employed by Respondent in the current case, have been based on this sliding scale concept, often providing for a 35% overall fee, accomplished by a 15% fee from the Fund recovery plus an amount from the $100,000 non-Fund recovery needed to make the total fee equal to 35% of the total recovery ("Sliding Scale Fee Arrangement").[2] ITLA argues, backed by affidavits of medical malpractice lawyers, that a Sliding Scale Fee Arrangement is reasonable in light of the expense, time, and risk attendant to representing medical malpractice plaintiffs. It seeks assurance that the Rules of Professional Conduct are not violated by a fee arrangement that produces a total fee of 20% to 35% of the total recovery.

Under this Sliding Scale Fee Arrangement, the total attorney fee could include 100% of non-Fund recovery for higher total recoveries. For example, if the total recovery were $1,250,000 (the maximum currently permitted by the MMA), the maximum possible total attorney fee would be $400,000, calculated by taking 100% of the non-Fund recovery ($250,000) plus 15% of the $1,000,000 Fund recovery ($150,000). The resulting attorney fee would be 32% of the total recovery, which is within the range approved in Johnson. Under this Sliding Scale Fee Arrangement, the fee would range from 32% on the highest recovery of $1,250,000 to 35%, assuming that 35%, not 40%, is the targeted total recovery.[3] Acknowledging that fees from the non-Fund recovery are not legislatively capped, the Commission argues that the amount of these fees must be reasonable in and of themselves. "Absent statutory regulation of the fee from the Fund recovery, few would argue that a one-third contingent fee is unreasonable. On the other hand, no one could credibly argue that a 100% contingent fee (or even a contingent fee in excess of 50%) is reasonable." Disciplinary Commission's Opening Brief on Reasonableness of Fee at 20. The Commission does not directly challenge ITLA's claims that the complexity and extent

---

[2] Although a Sliding Scale Fee Arrangement could be based on different figures, these figures will be used for the purpose of discussion in this opinion.

[3] ITLA also contends that if the malpractice claim is paid through a structured settlement, the overall numbers will vary and the lowest total fee could be less than 30%. This assumes that it is reasonable to collect the fee based on the gross amount of a settlement paid over time, rather than the present value. Stephens's case does not present the issue present in Benjamin, and we do not address it here. We note, however, that if the fee is collected substantially before a material part of the structured settlement, under Benjamin that must be spelled out in detail in the fee agreement, and the present value of the fee must be reasonable in relation to the present value of the settlement. *See* In re Hailey, 792 N.E.2d 851 (Ind. 2003).

of medical malpractice litigation justifies compensation at least in the same range as conventional tort litigation, and the Commission concedes that a 33 1/3% contingent fee is ordinarily reasonable in conventional tort cases. The Commission understandably points to the statute and to our own decisions discussing it in support of its position.

**E.  Guidance for a Reasonable Total Fee in Medical Malpractice Actions.**

Although a numerical answer to the question of reasonableness might have some utility, it is simply not possible to put a number on the ethical requirement that attorney fees be reasonable. Likewise, there can be no "safe harbor" range of permissible fees. Each case is unique and must be evaluated on its own terms, considering such factors as the complexity of the medical issues, the risk of a finding of no liability, the degree of dispute over damages, whether the case is fully tried, the anticipated litigation expenses, etc. That said, however, the Court can offer guidance for attorneys seeking to ensure that their fee agreements are ethically sound.

That guidance is informed by several principles. First, the constitutionality of the MMA's fee limitation could be questioned if it is applied in a manner that "seriously impede[s] the ability of the injured patient to employ effective counsel." Johnson, 404 N.E.2d at 602.

Second, the Legislature limited attorney fees from the Fund to 15%, but it left the determination of the reasonableness of the total fee for this Court to determine under the Professional Conduct Rules. Even if a total fee in a medical malpractice case includes 100% of the non-Fund recovery, the legislative limit on Fund money still acts as an effective cap on the total fee at the higher ranges. As demonstrated above, under the Sliding Scale Fee Arrangement, if an attorney undertakes and fully tries a complex, hotly disputed, and risky medical malpractice case, and succeeds in winning a maximum verdict of $1,250,000 for the client, the maximum fee is $400,000, or 32% of the total recovery.

Third, as suggested in Johnson, contingent attorney fees of up to 35% are commonly considered reasonable in tort litigation. In complex cases not governed by the MMA, an even higher contingent fee might be considered reasonable, though we agree with the Commission that 40% is

ordinarily the maximum. We cannot say the employment of the Sliding Scale Fee Arrangement to yield a contingent fee in the 32-35% range is unreasonable in all medical malpractice cases. To the extent <u>Johnson</u>, <u>Benjamin</u>, or Stephens I suggests otherwise, they are overruled.

Fourth, Indiana law holds in high regard the freedom of parties to enter into contracts of their own making. *See* <u>Fresh Cut, Inc. v. Fazli</u>, 650 N.E.2d 1126, 1129-30 (Ind. 1995). If an attorney and client enter into an arms-length, fully informed, and freely negotiated fee agreement along the lines of the Sliding Scale Fee Arrangement, this would be a strong indication that the resulting fee is reasonable and thus ethical. However, the Rules of Professional Conduct impose special requirements with respect to contingent fees. Prof. Cond. R. 1.5(c). An agreement containing a Sliding Scale Fee Arrangement must make clear that the client's recovery, if any, may be paid in part from the Fund and in part from other sources, indicate that the MMA limits the lawyer's fee attributable to that part of the recovery paid from the Fund to 15%,[4] and clearly explain the operation of the Sliding Scale Fee Arrangement in relation to this statutory requirement.

Finally, fees of all types in all manner of cases must be reasonable based on all the factors listed in Professional Conduct Rule 1.5(a). In some medical malpractice cases, a total fee of 32-

---

[4] The Appendix supplied by ITLA includes an example of an agreement that meets this disclosure requirement:

> The Indiana Medical Malpractice Act ("Act") restricts the amount that can be recovered for a medical malpractice claim. No patient, regardless of the severity of the malpractice or the resultant injuries, can recover more than $1,250,000. A doctor or other health care provider is not liable for an amount in excess of $250,000 of compensation. Any amount due from a judgment or settlement that is in excess of the total liability of all health care providers is paid from the Indiana Patients Compensation Fund ("Fund"). The Act further requires that a claim be presented to a medical review panel before it is filed in a court of law.

> In order to further discourage malpractice suits, the Act restricts the ability of the Attorneys and Clients to enter into the normal contingent fee agreement concerning any amounts paid by the Fund. It restricts Attorneys' fees on payments from the Fund to a maximum of 15%.

*See* ITLA's App'x at 147. These provisions are set forth to illustrate an acceptable method of describing that the client's recovery, if any, may be paid in part from the Fund and in part from other sources and that the MMA limits the lawyer's fee attributable to that part of the recovery paid from the Fund to 15%. The Court expresses no opinion as to the reasonableness of the fee in the sample agreement either as a general proposition or as applied to that case.

35% may be unreasonably high. The 20 to 35% range mentioned in <u>Johnson</u> suggests that a lower fee may be more appropriate in some cases. It is, of course, permissible to construct fee arrangements that escalate the percentage of recovery, depending on the stage of the proceeding—pre-panel, pre-discovery, pre-trial, etc.—at which it is achieved. And the rules with respect to disbursement of attorney fees in the case of structured settlements remain unaffected by this opinion.

## F. Appropriate Sanction for Respondent.

In the current case, the Court approved an agreement under which Respondent received a public reprimand for violation of Professional Conduct Rules 1.5(a) and 1.8(a). Under the guidance set forth above, this remains an appropriate sanction for several reasons. First, Respondent agreed that the fee arrangement *in this particular case* was unreasonable under Professional Conduct Rule 1.5(a). Respondent has asked for no relief from this concession and the Court sees no reason to revisit it *sua sponte*. Moreover, this Court found that the nonrefundable retainer provision of Respondent's agreement also violated Professional Conduct Rule 1.5(a) in the circumstances of this case and that Respondent's second fee agreement violated Professional Conduct Rule 1.8(a). *See* <u>Stephens I</u>, 851 N.E.2d at 1258. Respondent's public reprimand therefore stands.

## III.  Conclusion

The Court grants ITLA's Motion to Intervene, addresses the issue of the reasonableness of contingent fees in medical malpractice cases as set forth above, and reaffirms the agreed public reprimand given to Respondent.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur. Shepard, C.J., concurs in the result with a separate opinion.

**Shepard, Chief Justice, concurring in result.**

It is far from clear that today's per curiam represents the best policy for determining reasonable fees at the intersection of Rule 1.5 and the medical malpractice statute. This process has morphed from an agreed-sanction disciplinary case into something that looks much like rule-making, except that it has lacked many of the steps thought useful for good rule-making. Partly for this reason, it does not answer a good many questions important to the topic. I join in the outcome largely because the submissions of the Indiana Trial Lawyers Association, especially the brief and the several affidavits, have been so persuasive and the per curiam tracks their request. And because the defendants against whom they file claims (and their associations and related institutions with apparent stake in the outcome) have elected to stand silent, and our Disciplinary Commission has found itself in the awkward position of noting the interests of a client it does not represent, the General Assembly.