**J.C. PENNEY COMPANY, INC.,**
Appellant–Defendant,

v.

**SIMON PROPERTY GROUP, INC.; Greenwood Park Mall, LLC, and IPC International Corporation, Appellees– Defendants.**

No. 41A01–0907–CV–375.

Court of Appeals of Indiana.

March 17, 2010.

Publication Ordered April 27, 2010.

Mark C. Sherer, Kopka, Pinkus, Dolin & Eads, LLC, Indianapolis, IN, Attorney for Appellant.

Thomas C. Hays, Stefanie R. Crawford, Sonia C. Das, Lewis Wagner, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

J.C. Penney ("Penney") appeals the trial court's order granting summary judgment in favor of Simon Property Group ("Simon") and IPC International Corporation ("IPC") on the negligence complaint filed by Betty J. and Bill L. Walker (collectively "the Walkers").[1] Penney raises a single issue for review, namely, whether there is a genuine issue of material fact as to whether Simon and/or IPC owed a duty to the Walkers.

We affirm.

---

1. The Walkers filed a motion in opposition to the summary judgment motion along with a brief in opposition and designation of evidence. But the Walkers have not filed an appearance or a brief in this court. The caption on appeal reflects the issues on appeal and not other matters that were pending in the trial court but are not before us.

## FACTS AND PROCEDURAL HISTORY

In 1981, Simon was developing the Greenwood Park Mall ("the Mall"), a shopping center in Johnson County. On January 30, Penney purchased 10.5932 acres to be developed as the Penney anchor of the Mall. On that same date, Simon entered into a Restatement of Operating Agreement ("Operating Agreement") with the mall anchors, including Penney, which defined each party's obligations regarding mall operations. Section 8.3 of the Operating Agreement provides, in relevant part:

> [Simon] agrees with . . . [Penney] as to the Penney site . . ., and [its] respective successors and assigns, that unless otherwise expressly provided in [a] Supplemental Agreement (hereinafter defined) with [Penney], [Simon] will perform all maintenance (as defined in Section 8.2 hereof) of the Common Facilities on [Penney's] Site for the period commencing no later than the date . . . the [Penney] Building . . . is open for business and thereafter so long as [Simon] is required to operate a shopping center under the provisions of Section 6.6(d) hereof. . . .

Appellant's App. at 109. And Section 8.2 of the Operating Agreement provides, in relevant part:

> As used in this Section [of the Operating Agreement], the term "maintenance" shall mean that all Common Facilities will be kept at all times in good order and condition and state of repair and well lighted, all in accordance with reasonable standards of first-class regional shopping center operation in the India-

napolis, Indiana area, including without limitation, keeping the same in a clean and sanitary condition, the prompt removal of all rubbish, litter, snow and surface waters and the resurfacing, restriping, replacing, marking and repair of all parking areas, malls, service areas, walkways and landscaping, policing the foregoing with security personnel, and the maintenance of lighting fixtures including replacement of bulbs and furnishing current therefor.

Appellant's App. at 108–09. The Operating Agreement defines "Common Facilities" to include, in relevant part, "[a]ll sidewalks, walkways, aisles, tunnels and open malls providing pedestrian access to and across the [Simon] Site, Lazarus Site, Penney Site and Allied Site *except sidewalks around buildings* [.]" *Id.* at 104 (emphasis added). When construction was completed, the Penney Site at the Mall consisted of a retail building attached to the mall, sidewalks around that building, and adjacent parking lots.

On March 31, 2006, Betty Walker ("Walker"), her daughter, and her granddaughter were walking to the Penney store via the sidewalk around the Penney building when a Canada goose attacked Walker. The goose landed on her head, forcing her into a brick wall and then onto the sidewalk.[2] The attack continued until passersby assisted Walker. Penney "was the owner of the sidewalk where the [goose] attack occurred." Appellant's Brief at 3.

On February 23, 2007, the Walkers filed their complaint against Simon; the Greenwood Park Mall, LLC;[3] IPC, the company

---

2. The parties agree that Penney owns this sidewalk.

3. The Greenwood Park Mall is listed as a party on the Chronological Case Summary ("CCS") and on the complaint, but it is not

listed on all of the pleadings in the record on appeal. Simon and IPC's motion for summary judgment does not list the Mall as a party, either in the caption or in the title of the motion or accompanying pleadings. In

contracted by Simon to provide security for the Mall; and Penney. On October 7, 2008, Simon and IPC filed a joint motion for summary judgment, a memorandum of law in support of the motion, and a designation of evidence.[4] In particular, Simon and IPC argued that they were entitled to summary judgment because they owed no duty to the Walkers. On December 30, Penney filed its motion in opposition to Simon and IPC's motion for summary judgment, a supporting memorandum of law, and a designation of evidence. Penney argued that a genuine issue of material fact existed as to whether Simon and IPC owed a duty to the Walkers. On January 22, IPC filed its reply brief in support of the motion for summary judgment and designation of evidence. And on February 25, Simon and the Mall filed a reply brief in support of Simon's motion for summary judgment along with a designation of evidence.

On May 7, 2009, the court held a summary judgment hearing. On July 2, the court issued an order granting summary judgment in favor of Simon and IPC. Penney now appeals.

## DISCUSSION AND DECISION

### Standard of Review

■ Penney appeals from the trial court's grant of summary judgment in favor of Simon and IPC. Our standard of review for summary judgment appeals is well established:

When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties

designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

*Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269–70 (Ind.2009) (citations omitted). The party appealing from a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. *Knoebel v. Clark County Superior Court No. 1*, 901 N.E.2d 529, 531–32 (Ind.Ct.App.2009). Interpretation of the language in a contract is a question of law especially suited for summary judgment proceedings. *DLZ Ind., LLC v. Greene County*, 902 N.E.2d 323, 327 (Ind. Ct.App.2009). We review questions of law de novo, and therefore we give no deference to the trial court's interpretation. *Id.*

■ The Walkers' complaint alleges negligence by Penney, Simon, and IPC. The tort of negligence is comprised of three elements: (1) a duty on the part of

---

the order on appeal, the trial court granted summary judgment in favor of Simon and IPC. And the appellees' brief is signed by counsel on behalf of Simon and IPC, and no arguments are made on behalf of the Mall.

4. Subsequently, Penney also filed a motion for summary judgment, in response to which Simon and IPC filed motions in opposition. Penney does not appeal the denial of its motion for summary judgment.

the defendant in relation to the plaintiff; (2) a failure by the defendant to conform its conduct to the requisite standard of care; and (3) an injury to the plaintiff proximately caused by the failure. *Precedent Ptnrs. I, L.P. v. Hulen*, 863 N.E.2d 328, 331 (Ind.Ct.App.2007). To prevail on a motion for summary judgment in a negligence case, the defendant must establish that the undisputed material facts negate at least one element of the plaintiff's claim or that the claim is barred by an affirmative defense. *Id.* (citation omitted). Here, the only element in dispute is duty.

Simon and IPC filed the motion for summary judgment together. But because their arguments and positions differ slightly, they filed separate replies to Penney's opposition to their motion for summary judgment. Thus, we will review the entry of summary judgment in favor of Simon and IPC separately.

### Duty of Simon

In the motion for summary judgment, Simon and IPC set out their argument as follows:

In the case at bar, [Walker] alleges that she was walking past J.C. Penney[ ] when she observed a goose on the J.C. Penney[ ] sidewalk. This goose allegedly attacked [Walker]. It is further alleged that the goose was protecting a nest nestled in a planter on this same sidewalk owned by Penney[ ]. J.C. Penney[ ] admits it owns the alleged sidewalk. J.C. Penney[ ] admits it owns the planter. J.C. Penney[ ] admits it maintains the sidewalk. J.C. Penney[ ] admits it maintains the planter. Simon does not. IPC does not.

The undisputed facts in this case clearly indicate that the area where [Walker] was allegedly attacked by a Canadian goose was owned by J.C. Penney. It was not owned, maintained, retained, controlled, secured, or supervised by Simon or IPC. Absolutely no evidence to the contrary has been, or can be, presented. Simon and IPC have no right or responsibility to oversee or remove the Canadian goose that was on J.C. Penney's property, which allegedly attacked [Walker]. It also had no right or responsibility to prevent the Canadian goose from being on J.C. Penney's property. As a matter of law, Simon and IPC owed no duty to [Walker]. [Walker] cannot show an existence of a duty owed to her, or such subsequent breach thereof.

Appellant's App. at 37–38.

In its memorandum of law in opposition to Simon and IPC's motion for summary judgment, Penney argued that a genuine issue of material fact exists as to whether Simon and IPC owed a duty to the Walkers. In particular, Penney argued that there is a genuine issue of material fact as to whether Simon had an obligation under the Operating Agreement to perform maintenance throughout the mall, including on the Penney site. Penney also argued that Simon owed a duty under the three-part balancing test in *Thornhill v. Deka–Di Riding Stables*, 643 N.E.2d 983 (Ind.Ct.App.1994), *trans. denied.* We address each argument in turn.

██ Simon first contends that it owed no duty to Walker under the Operating Agreement. Under that agreement, Simon was obligated to "perform all maintenance ... of the Common Facilities on the [Penney's site]...." Appellant's App. at 109. The same agreement defines "Common Facilities" to exclude "sidewalks around buildings[.]" *Id.* at 104. In its opposition to summary judgment, Penney argued that Simon had contractually agreed "to perform maintenance activities throughout the mall proper, including the JC Penney site[,]" and that such "raise[d]

a genuine issue of material fact sufficient to preclude the granting of Simon's Motion for Summary Judgment." Appellant's App. at 49. We cannot agree.

Penney's construction of the Operating Agreement ignores the plain language that defines Common Facilities. The part of the Operating Agreement defining Simon's maintenance obligations, when read in conjunction with the definition of "Common Facilities," clearly provides that Simon has no obligation to maintain or police the sidewalks around the buildings. The fact that the Operating Agreement requires Simon to perform maintenance duties on its property as well as some of Penney's property does not alter the exclusion of sidewalks around buildings. Penney has not demonstrated the existence of a genuine issue of material fact as to whether Simon was obligated under the Operating Agreement to provide maintenance, or any services, to the sidewalk around the Penney building where Walker was attacked.[5]

Penney also argues that there is a genuine issue of material fact as to whether Simon has a duty under the three-part balancing test set forth in *Thornhill.* In that case, a YMCA camp for several years had had an arrangement with an off-site stable to offer YMCA campers horseback riding at a discounted rate. The campers signed up for a trail ride through the YMCA and paid the YMCA, which in turn reserved the horses and paid the stable. While attending the YMCA camp, Thornhill signed up for horseback riding and was injured during the ride when her horse suddenly bolted.

Thornhill filed a complaint alleging negligence, and the trial court granted summary judgment in favor of the YMCA. On appeal, we considered whether the YMCA owed a duty to Thornhill with respect to the trail ride. "In determining whether a duty exists, three factors must be balanced: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Thornhill,* 643 N.E.2d at 986 (citing *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991)). We held that the YMCA "had a relationship with Thornhill with respect to the trail ride because it had a relationship with [the stable] that gave it some measure of control over the trail ride with respect to [the YMCA's] campers." *Id.* at 987. We further found that the risk of being thrown from a horse and injured was foreseeable and the public policy "favors imposing a duty on the YMCA here because the YMCA attracted participants to its [its camp] by offering horseback riding as part of the weekend and by its direct involvement with the organization of the trail ride." *Id.* As a result, we concluded that the trial court erred when it granted summary judgment in favor of the YMCA on the issue of duty.

Here, Penney argued in its opposition to summary judgment that a similar arrangement exists in the present case. In particular, Penney stated that

Simon portrays the Greenwood Park Mall, along with JC Penney as a component part of the Mall as a whole, to the general public. Simon managed the mall, arranged for security to be provided, both inside and outside the Mall, and Simon gave no indication to the public

---

**5.** On appeal Penney also argues that Simon contractually agreed to provide security at the site of the goose attack. In support, Penney points to Section 8.2 of the Operating Agreement, in which the term "maintenance" is defined to include "policing the foregoing [area] with security personnel[.]" Appellant's App. at 109. But, again, Simon agreed to perform that service for the Common Facilities, which, as we have determined, clearly excludes sidewalks around buildings.

that neither JC Penney, nor the site on which the store sits, is an entirely different and separate entity. Because of these reasons, there are genuine issues of material fact such that Simon's Motion for Summary Judgment should be denied.

Appellant's App. at 51. On appeal, Penney made a similarly contention:

> Simon advertises the Greenwood Park Mall as a package entity. The public perception of the Mall, fostered by Simon, is that Simon is in control of the entire property. Signage on the mall doors and throughout various area of the mall refer to Simons' ownership and/or management of the property. Security vehicles used by IPC to patrol the parking lot are emblazoned with the Simon name and logo. At no point are there public indications that Simon neither owns nor controls all of the property associated with the Mall, including the J.C. Penney store and the sidewalk extending around its perimeter.

Appellant's Brief at 11.

■ But Penney has not supported this argument with citations to designated evidence.[6] Without such designated evidence, Penney has not shown any relationship between Simon and the Walkers. Nor did Penney make any arguments in its memorandum of law in opposition to summary judgment regarding the other two factors from *Thornhill*, foreseeability and public policy. As such, Penney has not demonstrated the existence of genuine issue of material fact as to whether Simon

owed a duty to the Walkers under the three-factor balancing test in *Thornhill*.[7]

### Duty of IPC

■ In its memorandum of law in opposition to Simon and IPC's motion for summary judgment, Penney also argued that a genuine issue of material fact exists as to whether IPC owed a duty to the Walkers. Specifically, Penney argued:

> IPC contends that it had no duty in the instant situation because its contract was with Simon, and not with Penney. Both Karen Barker, the former Security Director for IP[C], and Public Safety Officer Steeb, also of IPC, testified that under the contract, they were limited in where they could provide security services, without specific authority from the tenant. However, a close reading of the contract between Simon and IPC does not reveal any language excluding ICP [IPC] from providing security services to the JC Penney Store or land owned by JC Penney at the Greenwood Park Mall. The contract specifies that Simon owns the Greenwood Park Mall, that IPC provides security services to commercial property[,] that Simon wanted to retain IPC to provide security services at the Greenwood Park Mall, which was designated in the contract as the "Property." (Security Services Contract, page 1). At no point, does the contract limit IPC's security services to select portions of the Greenwood Park Mall. In fact, there are no geographic limitations specified in the contract beyond the provision that security is to be provided at the Greenwood Park Mall. In-

6. In the argument section of its brief, Penney made no citations to the transcript of the summary judgment hearing.

7. As noted above, Penney contends that Simon advertises the Mall as a package entity and that the public perceives the Mall in that way. But, again, Penney does not designate

any evidence in the record to support these contentions. And, in any event, the public perception or misperception of ownership and control would have no bearing on the legal principles that determine premises liability in this case.

stead, IPC was contracted to provide security to the Greenwood Park Mall.

Appellant's App. at 51–52. On appeal, Penney does not fully explain this argument. Instead, while arguing that Simon had a contractual obligation to maintain the sidewalk at issue, Penney stated only that "Addendum F of the Security Services Contract requires IPC to use Segway Human Transporters to 'patrol the interior and outside sidewalk areas of the Shopping Center'" and that "the Security Service Contract does not exclude portions of the sidewalk from those areas that are to be patrolled by IPC." Appellant's Brief at 9. Lacking cogent analysis of the argument regarding a contractual obligation of IPC, Penney has waived this contention.

■ Waiver notwithstanding, we find Penney's contention is without merit. IPC contracted with Simon to provide security for the "Greenwood Park Mall." Appellant's App. at 163. The contract further provides that Simon is the owner of the Greenwood Park Mall, and the parties agree that Simon does not own the Penney site or the sidewalk around the Penney building. But the Mall is not otherwise defined in the security contract.

To the extent the contract is ambiguous regarding the definition of the Mall area covered by the security contract, the evidence cited by Penney does not support its contention that there is a genuine issue of

material fact on this point. Penney concedes that Karen Barker, the former Security Director of the Mall, and Public Safety Officer Steeb, also an IPC employee, "both testified that under the contract, they were limited in where they could provide security services, without specific authority from the tenant." Id. at 51. Officer Steeb also testified that he drove around the parking lot to watch for "anything that was out of the ordinary" but that he "didn't really patrol the sidewalks." Id. at 191. Penney has not pointed to any evidence showing that there was a genuine question among any of the parties concerning the area over which IPC had security duties. Thus, Penney has not demonstrated the existence of a genuine issue of material fact whether IPC owed a duty to the Walkers under the security contract.

■ Penney also maintains that summary judgment was inappropriate as to IPC on the question of duty under *Thornhill.* On this point Penney relied on the same testimony by Karen Barker and Officer Steeb discussed above.[8] Again, Penney has not shown the existence of a genuine question of material fact. The testimony of IPC personnel cited by Penney does not show that there was any question as to IPC's area of responsibility. Nor did Penney show the trial court that there was any relationship between Penney and IPC.[9] As such,

8. In its memorandum in opposition to summary judgment, Penney did not make clear whether the paragraph quoted above referred to an argument for a contractual duty or a duty under the *Thornhill* test. Giving Penney the benefit of the doubt, we consider that paragraph to be Penney's analysis for both arguments.

9. On appeal, Penney provides a complete analysis of IPC's alleged duty under all three factors set out in *Thornhill.* But, again, we stand in the shoes of the trial court when

reviewing an order on summary judgment, and our review is limited to those materials designated to the trial court. *Donovan v. Grand Victoria Casino & Resort, L.P.,* 915 N.E.2d 1001, 1004 (Ind.Ct.App.2009). Given that Penney has not demonstrated a duty owed by IPC to the Walkers under the first factor set out in *Thornhill.* we decline to exercise our discretion to consider the remaining factors. *See Grinnell Mut. Reins. Co. v. Ault,* 918 N.E.2d 619, 626 n. 4 (Ind.Ct.App.2009).

Penney has not shown that summary judgment was inappropriate on the question of IPC's duty under *Thornhill*.[10]

## Conclusion

Penney has not shown a genuine issue of material fact precluding the entry of summary judgment in favor of Simon and IPC because Penney has not shown that Simon or IPC owed a duty to the Walkers under the legal theory of premises liability. In premises liability cases, the determination of whether a duty is owed depends primarily upon whether the defendant was in control of, or had some measure of control over, the premises when the accident occurred. *Peterson v. Ponda*, 893 N.E.2d 1100, 1106–07 (Ind.Ct.App.2008), trans. denied; *Thornhill*, 643 N.E.2d at 986. The undisputed facts show that Penney owned, controlled, and maintained the sidewalk where Walker was attacked and that neither Simon nor IPC had any obligations regarding that sidewalk area.

Penney has not shown that Simon owed a duty to the Walkers under the Operating Agreement or under the *Thornhill* three-factor test. Penney also has not shown that IPC owed a duty to the Walkers, either under the security contract between Simon and IPC or under the *Thornhill* test. We do not consider the other arguments raised by Penney on appeal because Penney has not shown that the same were made to the trial court. As such, Penney has not shown that the trial court erred by granting summary judgment in favor of Simon and IPC.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.

## *ORDER*

Appellees, by counsel, have filed a Motion To Publish Opinion.

Having considered the matter, the court FINDS AND ORDERS AS FOLLOWS:

1. Appellees' Motion to Publish Opinion is GRANTED.

NAJAM, FRIEDLANDER, BRADFORD, JJ., concur.

---

**10.** Penney also raises for the first time on appeal that IPC assumed a duty by gratuitously removing goose eggs and nests from the Penney site. Penney did designate IPC's application to the Department of Natural Resources for an egg/nest destructions subpermit, a permit to destroy goose eggs and nests, and related documentation. But, again, Penney did not raise the gratuitous assumption of duty in its motion in opposition to summary judgment or in its memorandum of law filed with the trial court. And Penney has no citations to the transcript in its brief to show that this argument was made to the trial court. As such, we decline to consider this argument on appeal. *See Ault*, 918 N.E.2d at 626 n. 4.