# FOR PUBLICATION



ATTORNEY FOR APPELLANTS:

**MARK C. GUENIN**
Guenin Law Offices, P.C.
Wabash, Indiana

ATTORNEY FOR APPELLEES:

**STEPHEN H. DOWNS**
Tiede, Metz & Downs, P.C.
Wabash, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LAGRO TOWNSHIP and KAREN PINKERTON TATRO, | ) ) ) | |
| Appellants-Plaintiffs, | ) ) | |
| vs. | ) ) | No. 85A02-1306-PL-520 |
| GEORGE E. BITZER and ZELMA E. BITZER, | ) ) ) ) | |
| Appellees-Defendants. | ) ) | |

APPEAL FROM THE WABASH CIRCUIT COURT
The Honorable Robert R. McCallen III, Judge
Cause No. 85C01-1105-PL-372

**December 9, 2013**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Lagro Township ("the Township") filed an action in Wabash Circuit Court against George E. Bitzer and Zelma E. Bitzer ("the Bitzers") seeking to exercise control over an area of land referred to as "the Belden Cemetery," which is located on land owned by the Bitzers. The trial court granted summary judgment in favor of the Bitzers. The Township appeals and claims that the trial court erred in granting summary judgment in favor of the Bitzers.

We affirm.

**Facts and Procedural History**

In 1872, Solomon and Nancy Fry deeded one acre of their real estate in Wabash County to "the public" to be used as a cemetery. This parcel was located on a larger, 219-acre parcel of land that was eventually purchased by the Bitzers in 1967. There is dispute as to how many deceased persons were buried in the Belden Cemetery over the years, but it is undisputed that there were some gravestones and markers in the Belden Cemetery. The Bitzers designated evidence that there were only two marked graves in the area, whereas the Township designated evidence that there were up to one hundred graves there. From the time the Bitzers purchased the land in 1967, the Township never contacted them about the Belden Cemetery or otherwise attempted to maintain the cemetery.[1] In fact, Mr. Bitzer averred that he contacted the Township Trustee sometime

---

[1] The Township asserts in its statement of the facts that members of the public and adjacent property owners worked to preserve the cemetery. In support of this assertion, the Township cites page 40 of its Appellant's Brief. This page contains a copy of an affidavit sworn by Robert Gray. Mr. Gray's affidavit, however, does not support the Township's factual assertion. Instead, it states that Mr. Gray had personal knowledge of "a heavy wooded and overgrown area known as Belden Cemetery," that had a white picket fence surrounding it. Appellant's App. p. 40. It also states that the prior owner of the land on which the cemetery is located "was emphatic that the cemetery area not be plowed or destroyed in any manner." Id. Several affidavits designated by the Township contradict its claim that the cemetery was maintained and instead indicate that the cemetery area was heavily wooded and/or overgrown with grass and bushes. See id. at 31, 33, 38, 40, 45, 49.

between 2006 and 2009 and asked if the Trustee was aware of the cemetery. He claims that he was told that the Trustee was unaware of the cemetery and did not desire to take care of yet another cemetery.

In September 2006, the Wabash County Assessor was directed by the State to assign a tax identification number to each and every parcel of land in Wabash County. The Assessor did so and, for the first time, the cemetery was given its own tax identification number, showing it as exempt from property tax. However, for some reason, the cemetery was described incorrectly as being east of a center section line, as opposed to its actual location west of the line, and also incorrectly listed the property as consisting of 1.57 acres instead of one acre. Because the cemetery was misidentified on the tax records, no exempt acreage was ever deducted from the Bitzers' property taxes. In other words, since 1967, the Bitzers' property taxes have included assessments for the land on which the cemetery is located.

In December 2009, the Bitzers cleared the cemetery area, save for the two marked graves of Solomon and Nancy Fry, around which they placed a fence. Upon learning of this, the Township Trustee investigated the situation and determined that the Bitzers had desecrated the Belden Cemetery. An investigation by the County Sheriff led to the filing of an affidavit for probable cause, but the County Prosecutor declined to prosecute.

On May 10, 2011, the Township filed a complaint[2] against the Bitzers seeking to quiet title, establish the Township's interest in preserving the Belden Cemetery, and

_____

[2] Karen Pinkerton Tatro, a relative of someone allegedly buried at the cemetery, also filed a claim for intentional infliction of emotional distress against the Bitzers. This claim was later dismissed, and Ms. Tatro is not an active party to this appeal.

3

recover damages for the Bitzers' actions. Both parties then filed motions for summary judgment. After both parties replied to each other parties' motion for summary judgment, the trial court held a hearing on the matter on May 22, 2013. The trial court entered an order on May 31, 2013, granting the Bitzers' motion for summary judgment and denying the Township's motion for summary judgment. The Township now appeals.

### Summary Judgment

Our standard of review of summary judgment appeals is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009) (citations omitted).

Although we are limited to reviewing only the evidence designated before the trial court, we are not constrained to the claims and arguments presented at trial nor the rationale of the trial court ruling. Manley v. Sherer, 992 N.E.2d 670, 673 (Ind. 2013). Instead, we may affirm a grant of summary judgment on any theory supported by the designated evidence. Id. The party appealing a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was

4

erroneous. <u>Knoebel v. Clark County Superior Court No. 1</u>, 901 N.E.2d 529, 531-32 (Ind. Ct. App 2009). And our standard of review is not altered by the fact that the parties filed cross-motions for summary judgment. <u>Ind. Farmers Mut. Ins. Grp. v. Blaskie</u>, 727 N.E.2d 13, 15 (Ind. Ct. App. 2000).

## Discussion and Decision

The Township sets out several reasons why it thinks the trial court erred in granting summary judgment in favor of the Bitzers. The Township first claims that, even if it is not the owner of the Belden Cemetery, it at least has the right to exercise authority over the cemetery because of the recording of the 1872 deed whereby the Frys dedicated to "the public" one acre of their land to be used as a cemetery.[3] The Township argues that the Bitzers took possession of the land subject to this recorded dedication.

There are two elements of a common-law dedication: (1) the intent of the owner to dedicate and (2) the acceptance by the public of the dedication. <u>Jackson v. Bd. of Comm'rs of Cnty. of Monroe</u>, 916 N.E.2d 696, 704 (Ind. Ct. App. 2009), <u>trans. denied</u>; <u>see</u> <u>also</u> 14 Am.Jur.2d Cemeteries § 17 (2013) ("The intention of the owner of the land to dedicate it for a public cemetery, together with the acceptance and use of the same by the public, or the consent and acquiescence of the owner in the long-continued use of his or her lands for such purpose, are sufficient.").

---

[3] It appears that the Township has abandoned on appeal its claim of title in the cemetery. And for good reason. "[A] right conferred by common-law dedication is usually a mere easement." 23 Am.Jur.2d Dedication § 3 (2013). Further, "[a] common-law dedication of land for a cemetery does not result in the extinguishment of the dedicator's title; the fee remains in him or her with a possibility of reverter on the abandonment of the cemetery, although the dedication does operate to reduce his or her rights as an owner." 14 Am.Jur.2d Cemeteries § 19 (2013).

Here, it is clear from the language of the Fry's 1872 dedication that they intended to dedicate "to the public" the one-acre portion of their land for use as a cemetery. It is also clear that the land was used at some point as a cemetery, even if it is disputed as to what extent it was used as a cemetery.

Nevertheless, the Bitzers claim that the deed "to the public" is void because it is a designation to a non-existing entity, i.e., the public. In support of this claim, they refer to cases which hold that a transfer of property to a non-existing entity is void. See, e.g., LeRoy v. Wood, 113 Ind. App. 397, 47 N.E.2d 604, 605 (1943) ("A deed naming a non-existent grantee is a nullity and passes no legal title to anyone."); Harwood v. Masquelette, 95 Ind. App. 338, 181 N.E. 380, 382 (1932) ("Prior to the instant of delivery [of a deed grating title to a corporation not yet in existence] it may be conceded that it was a nullity, so far as vesting title to the premises was concerned.").

We do not think that the deed of the land by the Fry's to "the public" to be used as a cemetery is a nullity. Instead of attempting to transfer fee title to a non-existing entity, the Fry deed *dedicated* land to "the public" for use as a cemetery. Indeed, "[t]here is no such thing as a dedication between the owner (of land) and individuals, and *the public* must be a party to every dedication. In fact, the essence of a dedication to public uses is that it shall be for the use of the public at large." 75 A.L.R.2d 591 (1961) (emphasis added). The Bitzers note that there was no evidence designated that the Township ever accepted this dedication. However, it is not necessary for there to have been any formal acceptance by "the public" of the dedication. "While acceptance by the public is necessary to complete the dedication, such acceptance may be implied from acts and

6

from the use of the land." 14 Am.Jur.2d Cemeteries § 17 (2013); see also Lay v. State, 12 Ind. App. 362, 39 N.E. 768, 769 (1895) (holding that ground set apart and used as a public cemetery for some years was a "cemetery" for purposes of statute criminalizing disturbing cemetery even though the land was not dedicated as a cemetery by means set forth in statute).

Thus, the evidence designated in the present case establishes that the Frys dedicated a portion of their real estate to "the public" as a cemetery and that at least some people were buried in the cemetery. The parties, however, presented contradicting evidence with regard to how many graves were located on the cemetery grounds. Thus, there is a genuine issue of material fact with regard to whether, and to what extent, the public used the cemetery dedicated by the Frys in such a manner as to act as an acceptance. Cf. Lay, 12 Ind. App. 362, 39 N.E. at 769 (noting that cemetery at issue had been set apart and used as a public cemetery for some years). For this reason, to the extent that the trial court's order granting summary judgment held that the Belden Cemetery was, as a matter of law, not a dedicated public cemetery, it went too far.

But whether and to what extent the public accepted the Frys' dedication of the cemetery is not the end of our analysis. This is so because, even if we assume that the dedication of the Belden Cemetery was properly accepted by the public, we must still address the issue of the Township's ability to exercise authority over the cemetery.

The Township claims that it has the right to exercise control over the Belden Cemetery pursuant to statutory authority. Specifically, Indiana Code section 36-6-4-3(9) provides that a township executive shall "[p]rovide and maintain cemeteries under IC 23-

7

14." Indiana Code sections 23-14-31-1 through 23-14-77-2, known as the Indiana General Cemetery Law,[4] govern cemeteries[5] in Indiana in some detail. Relevant to our discussion is Indiana Code chapter 23-14-68, which sets forth the rights and responsibilities of townships vis-à-vis cemeteries. Generally, a township trustee must "locate and maintain all the cemeteries described in section 1(a) of this chapter that are within the township." Ind. Code § 23-14-68-2. Such maintenance includes: "(1) Resetting and straightening all monuments. (2) Leveling and seeding the ground. (3) Constructing fences where there are none and repairing existing fences. (4) Destroying and cleaning up detrimental plants . . . , noxious weeds, and rank vegetation." Ind. Code § 23-14-68-3.

> But application of this chapter is limited by its first section, which provides:
>
> (a) This chapter applies to each cemetery that:
>     (1) is without funds for maintenance
>     (2) was in existence on February 28, 1939; and (3) is operated by a nonprofit organization or is not managed by any viable organization.
>
> (b) *This chapter does not apply to a cemetery located on land on which property taxes are assessed and paid under IC 6-1.1-4.*

Ind. Code § 23-14-68-1 (emphasis added).

The Bitzers claim that the Township is without authority over the Belden Cemetery by operation of subsection (b) of the above-quoted statute. That is, they claim that property taxes have been assessed and paid by them for all of their land, including

---

[4] See Ind. Code § 23-14-33-1.

[5] "Cemetery" is defined as "any land or structure in Indiana that is: (1) dedicated to; and (2) used for, or intended to be used for; the interment, entombment, or inurnment of human remains." Ind. Code § 23-14-33-7.

the Belden Cemetery, under Indiana Code chapter 6-1.1-4.[6] The designated evidence supports the Bitzers' contention.[7]

The Bitzers designated evidence indicating that they had always paid property taxes on the entirety of their land, including the Belden Cemetery. It was not until 2006 that the Assessor assigned a tax identification number to a portion of land purported to be the Belden Cemetery and listed this property as exempt. However, for unknown reasons, the description of the cemetery by the Auditor and Assessor lists the area as being 1.57 acres instead of the one-acre dedicated by the Frys; more importantly, the Auditor and Assessor's description of the cemetery locates the parcel as east and north of the actual cemetery land. It is this misidentified parcel that the Auditor and Assessor listed as exempt from property taxes.

As a result, no deduction had ever been made in the property tax records of the Auditor or Assessor, and the Bitzers had paid taxes on all of their land, including the cemetery land, since 1967. Accordingly, pursuant to Indiana Code section 23-14-68-1(b), the authority granted to the Township under Indiana Code chapter 23-14-68 does

---

[6] Contrary to the Township's claims to the trial court and on appeal, the Bitzers have been exceedingly clear that they are *not* claiming title by adverse possession.

[7] The Township claims in its brief that the Bitzers admitted in response to a request for admissions that the Belden Cemetery was exempt from property taxes and that they had not paid property taxes on the cemetery. While it is true that the Bitzers did initially admit this, they later requested permission from the trial court to withdraw this admission, and the trial court granted their request. See Appellee's App. p. 4. Even though this was noted to the trial court at the summary judgment hearing, the Township still incorrectly claims on appeal that Bitzers admitted that they did not pay taxes on the cemetery land. The record clearly does not support the Township's assertion, and the Township makes no argument on appeal that the trial court erred in permitting the Bitzers to withdraw their admission. Thus, for our purposes, the Bitzers did not admit that the Belden Cemetery was exempt from property taxes and that they had never paid taxes on the cemetery land.

not extend to the Belden Cemetery because it is a "a cemetery located on land on which property taxes are assessed and paid[.]"

Although the Township makes an extensive argument that the Bitzers' actions have desecrated the Belden Cemetery contrary to law, this is a criminal matter left to the discretion of the county prosecutor. As indicated above, to date, the County Prosecutor has declined to file charges against the Bitzers, and the claim of intentional infliction of emotional distress filed against the Bitzers was dismissed.

**Conclusion**

The statute authorizing a Township Trustee to exercise control over cemeteries located within the township is inapplicable where the cemetery is located on land on which property taxes have been paid. And here, even though there was a genuine issue of material fact with regard to whether and to what extent the dedication of the Belden Cemetery to the public was accepted by the public through usage, there is no genuine issue of material fact with regard to the Bitzers' payment of property taxes on the land on which the Belden Cemetery is located for decades. For this reason alone, the Township's claims of authority over the Belden Cemetery must fail. Accordingly, the trial court properly granted summary judgment in favor of the Bitzers.

Affirmed.

NAJAM, J., and BROWN, J., concur.