# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**GREGORY BOWES**
Greg Bowes Legal Services, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**WAYNE C. TURNER**
**ALEX GUDE**
Bingham Greenebaum Doll, LLP
Indianapolis, Indiana

**FILED**

Jul 30 2014, 9:41 am

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROGELIO GARCIA, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1401-PL-7 |
| | ) | |
| GARAU GERMANO HANLEY & | ) | |
| PENNINGTON, P.C., | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Theodore M. Sosin, Judge
Cause No. 49D02-1206-PL-23473

**July 30, 2014**

**OPINION - FOR PUBLICATION**

**BARTEAU, Senior Judge**

STATEMENT OF THE CASE

Rogelio Garcia appeals the trial court's grant of summary judgment in favor of Garau Germano Hanley & Pennington, P.C. ("GGHP"). He asserts that GGHP breached the parties' contract for legal representation and that the manner in which GGHP collected its fee under the contract broke the law. We affirm.

ISSUE

Garcia raises two issues, which we consolidate and restate as: whether the trial court erred in granting GGHP's motion for summary judgment.[1]

FACTS AND PROCEDURAL HISTORY

Garcia's then-wife, Renee Garcia, gave birth to their child in May 2001. Their child died in March 2002 while receiving medical care. The Garcias hired GGHP to pursue a medical malpractice claim against their son's doctor.

The Garcias and GGHP executed a contract to set the terms of their relationship. The contract explained that, by law, no plaintiff can recover more than $1,250,000 for medical malpractice, with a maximum of $250,000 paid by a medical service provider and an additional amount of up to one million dollars paid by the Indiana Patient's Compensation Fund ("the Fund"). Furthermore, the contract stated that, by law, GGHP's fee on money the Garcias received from the Fund, if any, would be limited to no more than fifteen percent of the total. However, the contract further explained that GGHP and

---

[1] Garcia also argues for the first time in his reply brief that the trial court should have struck from the record documents that GGHP included in its summary judgment materials. A claim raised for the first time in a reply brief is waived. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005).

2

the Garcias were "free to negotiate the contingent fee to be paid from any amounts recovered from the health care provider." Appellant's App. p. 85.

The contract further provided:

> If the case is settled prior to trial . . . and if no payment is received from the Fund, the Attorneys shall recover one-third (33 1/3%) of all amounts paid on behalf of the health care providers. However, if additional amounts are received from the Fund, the Attorneys shall receive 15% of such amounts and the percentage which the Attorneys shall receive from the funds paid by the health care provider shall be adjusted upward so that the Attorneys' compensation shall equal one-third (33 1/3%) of the total amount of compensation paid by the health care providers and the Fund.

*Id.*

In addition, the contract stated, "In the event that a judgment or settlement provides that payments shall be made to Clients over time, attorneys [sic] fees shall be calculated based upon the present cash value of the entire settlement or judgment." *Id.* at 86. The contract also included several examples of how GGHP's fee could be calculated depending upon the amounts recovered from the doctor and the Fund.

In 2002, GGHP, acting on behalf of the Garcias, filed a proposed complaint against the doctor with the Indiana Department of Insurance. In 2005, a medical malpractice review panel determined that the doctor had failed to comply with the appropriate standard of care. The panel further determined that the doctor's conduct was a factor in the death of the Garcias' child.

Next, the Garcias filed a civil complaint against the doctor. The doctor and the Garcias entered into a settlement agreement in January 2008. Under the terms of the agreement, the doctor agreed to pay the Garcias $150,000 upfront. The doctor further

3

agreed to pay $37,001 to purchase an annuity that would pay the Garcias $100,000 over time. Thus, the Garcias would receive a total of $250,000 from the doctor, the maximum amount allowed by statute. GGHP took $62,333 of the doctor's payment, which equaled one-third of the then-present value of the settlement, as its fee, and transferred the rest to the Garcias.

Next, the Garcias, through GGHP, filed a petition with the Fund, seeking additional compensation for their child's death. In July 2008, the Fund and the Garcias settled for one million dollars. The Fund paid the Garcias $900,000 upfront, and, at the Garcias' request, agreed to pay the remaining $100,000 through an annuity. *Id.* at 80.

GGHP took $150,000, or fifteen percent, of the Fund proceeds as a portion of its fee. In addition, GGHP determined that, in light of the total amount of the settlement, it was entitled to increase the fee it received from the doctor's settlement and took an additional $124,668 from the money the Fund paid the Garcias. Thus, out of the then-present value of the total recovery of $1,137,001, GGHP took a fee of $337,001. GGHP's fee effectively consumed one hundred percent of the then-present value of the money the doctor paid the Garcias.

In 2010, Renee Garcia transferred to a financial services company her right to receive future payments from the $100,000 annuity that the doctor had established. In exchange, she received an immediate payment of $10,000, which she intended to use to pay taxes and bills. Garcia consented in writing to the transfer. *Id.* at 115.

In 2012, Garcia sued GGHP, alleging breach of contract. Garcia claimed GGHP breached the contract because his former attorneys "charged an attorney fee in excess of

4

the fees allowed by law." *Id.* at 43. Garcia denied that he presented a claim for legal malpractice, asserting, "Garcia does not claim that [GGHP] was negligent in providing professional legal services. In fact, it is demonstrably clear that its services were provided in accordance with the relevant standard of care." *Id.*

Garcia also filed a motion for class certification. The trial court placed class certification issues on hold. Next, GGHP moved for summary judgment. Garcia filed a response, and GGHP replied. Following oral argument, the trial court granted GGHP's motion. This appeal followed.[2]

## DISCUSSION AND DECISION

We review a summary judgment order de novo. *Bules v. Marshall Cnty.*, 920 N.E.2d 247, 250 (Ind. 2010). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56. We construe all facts and reasonable inferences drawn therefrom in a light most favorable to the non-moving party. *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909 (Ind. 2009). The party appealing a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. *Lagro Twp. v. Bitzer*, 999 N.E.2d 902, 904 (Ind. Ct. App. 2013).

Interpretation of a contract is a question of law especially suited for summary judgment proceedings. *J.C. Penney Co., Inc. v. Simon Prop. Grp., Inc.*, 928 N.E.2d 579, 582 (Ind. Ct. App. 2010). We give no deference to the trial court's interpretation. *Id.*

---

[2] GGHP requests oral argument. We deny GGHP's motion by separate order.

Garcia argues GGHP breached the contract by taking too large of a share of the money the Fund paid to the Garcias. He acknowledges that the contract authorized GGHP to adjust the amount of fees to which it was entitled after a settlement was reached with the Fund. However, he claims the contract does not identify the source of the fee adjustment, and any adjustment should not have been paid "from the client's share of the net proceeds." Appellant's Br. p. 9.

Clear, plain and unambiguous contractual language is conclusive of the parties' intent, and we will neither construe unambiguous language nor add provisions not agreed to by the parties. *Vincennes Univ. ex rel. Bd. of Trustees v. Sparks*, 988 N.E.2d 1160, 1165 (Ind. Ct. App. 2013), *trans. denied*. Here, the contract clearly states that if additional money is received from the Fund, GGHP's percentage of fees from the amount paid by the doctor "shall be adjusted upward" so that GGHP's compensation shall equal one-third of the total amount of compensation. Appellant's App. p. 85. Nothing in the contract barred GGHP from taking its adjusted fee for the doctor's settlement from money the Fund paid to the Garcias instead of, for example, demanding that the Garcias pay GGHP funds that they had previously received from the doctor's settlement. In addition, the contract cannot reasonably be read as requiring GGHP to irrevocably implement its fee adjustment at the time the doctor tendered payment, without waiting to see whether a settlement would be reached with the Fund and for what amount.

Garcia further argues that the contract's mechanism for adjusting GGHP's fee violates Indiana Code section 34-18-18-1 (1998), which provides that the share of an attorney's fee from an award paid by the Fund may not exceed fifteen percent of the

6

award. Specifically, Garcia asserts that the doctor paid $37,001 to purchase the annuity, but GGHP included that amount in its fee adjustment calculations after the Fund settled with the Garcias. Because the doctor paid the $37,001 to the company that issued the annuity rather than to the Garcias, Garcia reasons that GGHP's share of that money necessarily came from the Garcias's share of the Fund payment, above and beyond the maximum fifteen percent share permitted by statute.

Garcia's calculations are erroneous. The parties' contract states that if payments are made to the Garcias over time, GGHP's fee is calculated based on the present cash value of the annuity. Here, GGHP kept $62,333 of the Garcias' settlement with the doctor, which represented one-third of the $150,000 doctor's upfront payment plus one-third of the value of the $37,001 cost of the annuity.

After the Fund settled with the Garcias for one million dollars, GGHP took fifteen percent, or $150,000, of the value of the Fund's settlement for its fee as permitted by Indiana Code section 34-18-18-1. At that point, GGHP was further entitled under the contract to adjust the share of its fee taken from the doctor's settlement in proportion to the total value of the settlement. GGHP took the adjustment ($124,668) from the money that the Fund owed to the Garcias, instead of asking the Garcias to turn over money that the doctor had previously paid them.

The amount GGHP initially took as its fee, $62,333, plus the $124,668 adjustment GGHP made after the Fund settled with the Garcias, equals $187,001, or the then-total present value of the Garcias' settlement with the doctor. This amount was authorized under the contract. The manner in which GGHP accounted for its fee adjustment does

7

not compel a conclusion that GGHP took a share of the Fund settlement above the fifteen percent permitted by statute. *See In re Stephens*, 867 N.E.2d 148, 155-156 (Ind. 2007) (attorney and client may contract to allow the attorney to adjust his or her share of the fee from a non-Fund source, so long as the contract caps the fee from the Fund's payout at the fifteen percent statutory limit).

Next, Garcia argues that the contract is illegal because GGHP's fee was unreasonable. Specifically, Garcia claims that GGHP did not sufficiently advise him and his wife of the risks of accepting a portion of the settlement as an annuity, and as a result they did not give informed consent to the contract.

The reasonableness of an attorney's fee in a medical malpractice matter varies from case to case and requires consideration of factors including the complexity of the medical issues, the risk of a finding of no liability, the degree of dispute over damages, whether the case is fully tried, and the anticipated litigation expenses. *Id.* at 155. Indiana law "holds in high regard the freedom of parties to enter into contracts of their own making." *Id.* at 156.

For these reasons, a representation agreement containing a sliding scale fee agreement must: (1) make clear that the client's recovery, if any, may be paid in part from the Fund and in part from other sources; (2) indicate that the statute limits the lawyer's fee attributable to that part of the recovery paid from the Fund to fifteen percent; and (3) clearly explain the operation of the sliding scale in relation to this statutory requirement. *Id*. If an attorney and client enter into an arms-length, fully informed, and freely negotiated fee agreement along the lines of the agreement discussed

8

in *Stephens*, "this would be a strong indication that the resulting fee is reasonable and thus ethical." *Id.* In addition, deferred payments involve a time value factor and collection risks, and the client must be informed of those risks. *In re Hailey*, 792 N.E.2d 851, 859-60 (Ind. 2003).

Here, GGHP disclosed to the Garcias in the contract that any recovery could be paid in part by the doctor and in part by the Fund, and any recovery would be limited by statute to $1,250,000. The contract further provided that GGHP's share of fees from money paid by the Fund, if any, would be limited by statute to fifteen percent. Next, the contract spelled out how settlement amounts would be divided between the Garcias and fulfilling GGHP's fees, depending on whether settlement amounts were paid in a lump sum or in installments, and that GGHP could adjust its percentage of the doctor's settlement if the Fund also settled with the Garcias. The contract also explained that if payments were structured over time, GGHP's fee would be calculated based on the then-present value of the settlement. Finally, GGHP included several examples of how the calculations would change depending upon the amounts recovered, if any, from the doctor and the Fund.

In addition, the Garcias' lead attorney, Jerry Garau, further discussed the terms of the representation with Renee Garcia. It is his habit in such situations to explain "what an annuity is and how it works." Appellant's App. p. 121. He further informs clients that a portion of the settlement is used to purchase the annuity and that the annuity makes payments over time. Garau further states that the money used to purchase the annuity is tax-free, "as is the growth generated by the annuity." *Id.* He "does not tell clients that

the annuities are risky. Rather, he tells them that the annuities are unattractive when the interest rates are low and the client is locked into that rate, but that a settlement which provides access to the Fund is far better than a trial with contested liability." *Id.* at 122.

This evidence establishes that the contract contains the essential elements discussed in *Stephens*, and GGHP informed the Garcias how structured settlements work and identified the issues that may arise when annuities are part of a settlement. Based on our Supreme Court's precedent, the Garcias were properly informed of the benefits and risks of their settlement arrangement, and we cannot say that the contract was unreasonable as a matter of law. *See Stephens*, 867 N.E.2d at 156.

Garcia further argues that the contract is unreasonable because GGHP paid its own fees immediately upon receipt of the settlement funds and required the Garcias to bear the sole risk of default of future payments under the annuities. However, such an arrangement is not necessarily unreasonable. Where a structured settlement requires the client to bear a risk of default on future payments, the attorney must disclose the risks to the client and obtain the client's consent or may be found to have breached the contract. *Hailey*, 792 N.E.2d at 859-60.

Here, GGHP structured the settlement agreements with the doctor and the Fund so that deferred payments would be disbursed through an annuity rather than through less reliable means. *Cf. Matter of Myers*, 663 N.E.2d 771, 773 (Ind. 1996) (attorney negotiated a settlement agreement where the defendants agreed to make installment payments directly to attorney's client but later defaulted). Garau informed Renee how

annuities work and told her that he did not consider them to be "risky." Appellant's App. p. 122. He further explained annuities' tax consequences.

Furthermore, less than half of the doctor's settlement was to be paid through an annuity, and only ten percent of the Fund's settlement was to be paid via an annuity, so the deferred payments were only a portion of the overall settlement. Finally, the Garcias asked to have a portion of their settlement with the Fund paid through an annuity, *id.* at 80, so they took upon themselves the risk of future non-recovery under that annuity. This evidence fails to demonstrate that GGHP misadvised the Garcias or that the risks to the Garcias were so disproportionate as to render the contract unreasonable.

Finally, Garcia asserts that GGHP breached a fiduciary duty to put the Garcias' interests ahead of its own interests in negotiating the settlement agreements. Breach of a fiduciary duty is a tort claim for injury to personal property. *York v. Frederick*, 947 N.E.2d 969, 978 (Ind. Ct. App. 2011), *trans. denied*. The statute of limitation for a claim of injury to personal property is two years. Ind. Code § 34-11-2-4 (1998). Here, Garcia did not file suit until almost four years after he and his wife executed the settlement agreements with their child's doctor and the Fund. Thus, his claim appears to be barred by the statute of limitation.

In addition, Garcia did not allege breach of fiduciary duty in his civil complaint or during summary judgment proceedings. Thus, he is raising the claim for the first time on appeal, and it is waived. *Bowden v. Agnew*, 2 N.E.3d 743, 749 (Ind. Ct. App. 2014). Garcia argues that he can raise arguments for the first time on appeal because our standard of review is de novo. This is incorrect. Appellate courts generally do not

11

review an issue that was not presented to the trial court, even under de novo review. *Ind. Dep't of Envt'l Mgmt. v. Raybestos Prods. Co.*, 897 N.E.2d 469, 474 (Ind. 2008), *corrected on reh'g*, 903 N.E.2d 471 (2009).

## CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

NAJAM, J., and PYLE, J., concur.